# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **ELLEN BRAMWELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 04-927 (RMC)** |
| | ) | |
| **MARION BLAKEY,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
|  | ) | |

## <u>MEMORANDUM OPINION</u>

Ellen Bramwell[1] sues Marion Blakey, Administrator of the Federal Aviation Administration, and Norman Mineta, Secretary of Transportation in their official capacities (collectively the "FAA"), alleging discrimination under the Rehabilitation Act (the "Rehab Act"), 29 U.S.C. §§ 791-794e.[2]  She claims that the FAA failed to reasonably accommodate her disability during her employment and that the FAA terminated her due to her disability.  The FAA has filed a motion to dismiss or in the alternative for summary judgment.  The Court will grant the FAA's motion for summary judgment because the FAA did not know Ms. Bramwell was disabled until December 5, 2000, and reasonably accommodated her both before and after discovering her disability.  Further, after December 5, 2000, Ms. Bramwell was not a "qualified" individual because she was not available for work.

---

[1] Ellen Bramwell was formerly known as Ellen Michaelis.

[2] The Complaint in this matter refers to the Rehab Act and the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12101-12213.  However, the ADA does not apply to federal government employees.  42 U.S.C. § 12111(5)(B)(i).  Because the ADA does not apply, the Court will dismiss Ms. Bramwell's claim under the ADA.

# I. BACKGROUND

Ms. Bramwell's alleged disability arose from an incident that occurred while she worked as an air traffic controller ("ATC") for the FAA at the Cleveland Air Route Traffic Control Center in Cleveland, Ohio (the "Cleveland Center"). Defs.' Ex. 1, Bramwell Deposition ("Bramwell Dep."), at 24. The incident occurred on June 23, 1998, when Ms. Bramwell was responsible for a sector in which the greatest number of airplanes should be fifteen. Due to bad weather and errors elsewhere in the system, Ms. Bramwell suddenly had twenty-six airplanes in her sector. As a result, two planes passed much too closely to each other. The incident was anonymously reported to the National Transportation and Safety Board (the "NTSB"). NTSB investigated, and its initial conclusion was that the incident was caused by Ms. Bramwell's operational error. Two months later, after completing a fuller investigation, the NTSB cleared Ms. Bramwell of fault. The two events — the incident itself and then being blamed for it — caused Ms. Bramwell great emotional turmoil that was eventually diagnosed as Post Traumatic Stress Disorder. Because she was prescribed Prozac and other psychotropic drugs for her emotional distress, Ms. Bramwell lost her medical certificate to work as an ATC. Bramwell Dep. at 24, Defs.' Ex. 2, Dr. Bruhn's Report at 2-3. After the 1998 incident, Ms. Bramwell filed a claim for and received worker's compensation. *Id*. at 2.

Following her medical decertification, the Cleveland Center placed Ms. Bramwell in various temporary positions. Bramwell Dep. at 25-26. On December 9, 1999, Ms. Bramwell's psychologist, Dr. John Stratton, recommended to the Facility Manager at the Cleveland Center that Ms. Bramwell be permitted to work six-hour days, as she was unable to put in an eight-hour day due to anxiety and difficulty focusing. Defs.' Ex. 8, Letter from Stratton. The Cleveland Center followed this recommendation, Pl.'s Appendix ("Pl.'s App.") at 1, Bramwell Decl., while it tried to

find a non-ATC position for Ms. Bramwell but no permanent job was identified in Cleveland.  Ms.

Bramwell then approached Jeffrey Griffith, Director of Air Traffic Planning and Procedures

Division, regarding employment at FAA headquarters in Washington, D.C.  Defs.' Ex. 4, Griffith

Decl.  She did not tell Mr. Griffith that she was disabled.  Bramwell Dep. at 111.  Ms. Bramwell

applied for a position as a staff specialist, a level GS14 position, at FAA headquarters.  She obtained

the job and moved to the D.C. area, away from her family and friends who had provided her

emotional support.

Ms. Bramwell started her new position in June 2000.  Bramwell Dep. at 40.  From

June 2000 to September 2000, her supervisor was Kenneth Davis.  Ms. Bramwell never told Mr.

Davis that she was disabled, Defs.' Ex. 21, Pl.'s Admissions #4, and she never gave him a copy of

Dr. Stratton's 1999 letter recommending that she work six-hour days.  Bramwell Dep. at 97.  She

never signed a general release regarding the medical records associated with her disability, and she

never authorized the FAA to share her medical records or documents that she submitted in support

of her workman's compensation claim with her first or second line supervisors.  *Id.*; Pl.'s

Admissions #1-2.

Mr. Davis stated in an affidavit that he was aware Ms. Bramwell was struggling with

emotional issues, but he did not know that her situation constituted a legal disability:

> I was aware [Ms. Bramwell] was struggling with emotional issues due to an
> operational error she experienced at the Cleveland Center.  It was my understanding
> she was struggling with emotional trauma as a result of the operational error and had
> difficulty coming back to work full strength.  However, I was never given any formal
> or official medical notice qualifying her trauma as a handicap.  She made me aware
> of her decision to continue with the [worker's compensation] process she had begun
> prior to arriving at Headquarters.  Therefore, when she first arrived, she mentioned
> that she needed flexibility in her schedule and would be required to work shorten
> [sic] hours and possibly telecommute, but she didn't say it was related to a handicap,

just that she was still working through some difficulties from the operational error. [Ms. Bramwell] mentioned that her doctor didn't want her to return to work full time, but she said she would work as much as she could because she wanted to work and would keep me posted. I was fine with her suggestion and I didn't have any objection to her working 6 hour days or whatever was a reduced schedule, so long as I was kept informed. As a matter of fact, many times she worked, on her own longer than six hour days and there were also instances when she would call me at 2:00 p.m. to indicate that she wasn't coming in that day at all. I didn't have access to her case file nor did I attempt to review this information. I had not received a request for a reasonable accommodation from any of my employees.

Pl.'s App. at 29, Davis Decl.

Nonetheless, Mr. Davis extended great flexibility to Ms. Bramwell and allowed her to take part or whole days off as needed. Defs.' Ex. 6, Davis Decl.; Bramwell Dep. at 40-41. Her time records show that she was on a "maxi flex" or "variable"schedule. Pl.'s App., Time Records at 13-24. While sometimes she worked an eight- to ten-hour day, Ms. Bramwell's time records reflect than in every week of her time at headquarters, except the four weeks she attended the Airspace and Procedures training course in Oklahoma City, Ms. Bramwell took whole or part days off, attributed as sick leave, annual leave, and leave without pay. *Id.*

While Mr. Davis knew that Ms. Bramwell left Cleveland Center due to loss of her medical certificate, this is common in the ATC profession and he did not believe it was relevant to her ability to perform her job at FAA headquarters. Defs.' Ex. 6, Davis Decl. ¶ 2. Similarly, Mr. Davis did not believe that Ms. Bramwell's pursuit of a worker's compensation claim or her taking Prozac was relevant to her ability to perform a staff job at FAA headquarters. *Id.*, Davis Decl. ¶¶ 3 & 4.

In September 2000, Christopher Metts became Ms. Bramwell's supervisor. Defs.' Ex. 7, Metts Decl. ¶ 1. Ms. Bramwell never told Mr. Metts that she was disabled, Defs.' Ex. 21,

Pl.'s Admissions #3, and she never gave him a copy of Dr. Stratton's 1999 letter recommending that she work six-hour days.  Bramwell Dep. at 97.  She continued to work a "maxi flex" and "variable" schedule until she failed to report to work on December 5, 2000.  She never reported to work again.  Bramwell Dep. at 116.

After Ms. Bramwell failed to report to work, Mr. Metts received a letter from Ms. Bramwell's psychiatrist, Dr. Michael A. Glasser, dated December 5, 2000.  The letter indicated that Ms. Bramwell was suffering from depression and that she had been diagnosed with Major Depression and Post Traumatic Stress Disorder in March 1999.  Defs.' Ex. 10, Glasser Letter.  Dr. Glasser noted that Ms. Bramwell's depression had become progressively worse since she moved from Ohio to Washington, D.C.  *Id*.  He wrote, "When I spoke to her on the phone, 12/04/00, she was extremely distraught and I advised her to take off the next two weeks from work to concentrate on her moods and counseling.  At the end of those two weeks we will be re-evaluating her." *Id*.  Ms. Bramwell requested sick leave until January 9, 2001.  Defs.' Ex. 11, Bramwell Letter.  Mr. Metts granted the request.  Bramwell Dep. at 111.  He designated her time as six hours per day of sick leave and two hours per day leave without pay.  Pl.'s App. at 24; Defs.' Ex. 7, Metts Decl. ¶ 7.

In January or February 2001, Mr. Metts spoke to Ms. Bramwell by phone.  She requested six-hour workdays and to be assigned only "single tasked or structured assignments." *Id*., Metts Decl. ¶ 8.  Ms. Bramwell defines "single tasked" assignments as those that have only one step and "structured assignments" as those where the objective and outcome are explained and the resources that are available to reach the expected outcome are explained.  Bramwell Dep. at 84-85.  Mr. Metts asked Ms. Bramwell to come to work to discuss which projects could be "single tasked."  Bramwell Dep. at 114.  Ms. Bramwell did not report to work.  Bramwell Dep. at 116.  She believed

5

that Mr. Metts had not investigated her file[3] or addressed her concerns.  She stated, "[S]eeing that he hadn't responded to or even investigated my file, I didn't think I was going to be able to have any meaningful [ex]change without having the concerns that were stated by my doctor addressed first." Bramwell Dep. at 114.

Dr. Glasser and Dr. Arnold R. Bruhn, Ms. Bramwell's psychologist, issued reports dated January 29 and 30, 2001, respectively.  These reports indicated that Ms. Bramwell's disability began on December 6, 2000, but they did not indicate when she might return to work or any accommodation that would facilitate her return.  Defs.' Ex. 13, Glasser and Bruhn Reports.  After Ms. Bramwell exhausted her annual leave, sick leave, and advanced leave, she went on leave without pay status starting on February 25, 2001.  Defs.' Ex. 15, FAA Letter at 2.

On March 12, 2001, Mr. Metts sent a memo to Ms. Bramwell requesting medical documentation of her current condition.  Defs.' Ex. 12, Metts Memo.  In response, Dr. Bruhn submitted a report dated April 17, 2001.  Defs.' Ex. 2, Bruhn Report.  Dr. Bruhn noted that Ms. Bramwell was suffering from depression and that the depression had worsened since she moved to the Washington, D.C., area, away from her family and friends.  *Id*. at 7-8.  He stated that her symptoms included sleep disturbance, agitation, problems with concentration, low mood, and low self confidence.  *Id*. at 11.  Her symptoms were relieved somewhat with medication.  *Id*. at 11-12. Dr. Bruhn recommended that Ms. Bramwell "work at something less stressful for awhile [sic] in hopes that the cycle of stress and anxiety mixed with depression be broken."  *Id*. at 12.  He further recommended job coaching and training "if the FAA offers her a position in the future."  *Id*. at 12-

---

[3] Ms. Bramwell admitted that she did not know, in fact, whether or not Mr. Metts had investigated her file.  Bramwell Dep. at 114-15.

13. Dr. Bruhn explained that his prognosis was guarded, and stated that Ms. Bramwell eventually could return to work as a staff person if she received adequate training. *Id*. at 13. Notably, Dr. Bruhn did not indicate when Ms. Bramwell could return to work at FAA headquarters.

Dr. Glasser submitted a report dated May 17, 2001. Defs.' Ex. 14, Glasser Report. At the time he drafted the report, Ms. Bramwell was in the process of moving back to Ohio. *Id*. at 1.[4] Dr. Glasser also did not indicate when Ms. Bramwell would be able to return to work. He stated, "Due to her ongoing mood problems I will be unable to tell you about her return to work until she settles in in [sic] Ohio and her support system." *Id*. at 2. Dr. Glasser opined that Ms. Braswell "is not a candidate to return to a GS14 position with the FAA" and that "if she is going to return to work she needs both retraining and a job that better meets her educational level and skills." *Id*.

Ms. Bramwell's doctors never indicated that she was ready to return to work at FAA headquarters. Bramwell Dep. at 127-28. She has never been reassessed by her doctors, as the FAA did not request it and she did not want to pay for it. Bramwell Dep. at 127.

After Ms. Bramwell had been on continuous leave without pay status for more than one year, on April 2, 2002, Mr. Metts sent a letter to Ms. Bramwell notifying her that the FAA proposed to remove her from her position due to "unavailability for regular or full time duty" and "inability to perform the essential functions of her  position due to her medical condition." Defs.' Ex. 15, Metts Letter at 1-3. Then, by letter dated May 20, 2002, Mr. Metts notified Ms. Bramwell that she would be removed from her position effective May 24, 2002. Defs.' Ex. 16, Metts Letter. Citing Dr. Glasser's statement that Ms. Bramwell was not a candidate to return to a GS14 position,

---

[4] Ms. Bramwell moved to Ohio, an over six hour drive from Washington, D.C.  Bramwell Dep. at 7.  On October 4, 2001, she got married. *Id*. at 6. In February 2002, she and her husband purchased a home in Ohio. *Id*. at 22.

Mr. Metts explained that he did not have a non-GS14 position available to offer. *Id*., Metts Letter at 2. Further, he explained that, based on Ms. Bramwell's unavailability since December of 2000, and the fact that Ms. Bramwell had not been released by her physician to return to full performance of her work or light duty, he had no reasonable expectation that she would be able to return to work in the foreseeable future. *Id*. at 3.

Ms. Bramwell appealed her removal to the Merit Systems Protection Board ("MSPB"). The MSPB upheld the propriety of her removal. Defs.' Ex. 17, MSPB Ruling. Ms. Bramwell requested a review of the MSPB decision by the Equal Employment Opportunity Commission ("EEOC"). The EEOC concurred in the MSPB's finding of no discrimination. Defs.' Ex. 18. Ms. Bramwell then filed this suit under the Rehab Act.

## II. LEGAL STANDARDS

### A. Jurisdiction

Pursuant to 28 U.S.C. § 1331(a), the "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." A claim "arises under" federal law in "those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983). Ms. Bramwell's complaint alleges that the FAA refused to accommodate her disability and wrongfully terminated her in violation of the Rehab Act. Because this claim arises under the laws of the United States, this Court has federal question jurisdiction under § 1331. *See E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 623 (D.C. Cir. 1997).

### B.  Motion to Dismiss or For Summary Judgment

The FAA moves to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for summary judgment under Federal Rule of Civil Procedure 56.  Where matters outside the pleadings are presented in a motion to dismiss, the court must treat the motion as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(b)(6).  Here, the parties have presented matters outside the pleadings, such as Ms. Bramwell's deposition, letters, reports, and declarations.  Thus, the Court treats the FAA's motion as a motion for summary judgment.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252.  In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671,

675 (D.C. Cir. 1999).  Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor.  *Id.*  If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III. ANALYSIS

"The Rehabilitation Act of 1973 governs employee claims of handicap discrimination against the Federal Government.  Its basic tenet is that the Government must take reasonable affirmative steps to accommodate the handicapped, except where undue hardship would result." *Barth v. Gelb*, 2 F.3d 1180, 1183 (D.C. Cir. 1993).  The Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability . . . be subjected to discrimination under any program or activity . . . conducted by any Executive Agency . . . ."  29 U.S.C. § 794(a).[5]  The statute does not protect all disabled individuals from all types of adverse employment actions; it protects a defined class of persons from particular types of discrimination. *Flemmings v. Howard Univ.*, 198 F.3d 857, 860 (D.C. Cir. 1999).  To establish a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must demonstrate that she is a qualified person with a disability; that she can perform the essential functions of her job with or without reasonable accommodation; and that her employer failed to reasonably accommodate her disability or that she was terminated due to her disability.  *Barth*, 2 F.3d at 1186; *Carr v. Reno*, 23 F.3d 525, 529 (D.C. Cir. 1994).

---

[5] For purposes of employment discrimination cases, the standards for liability under the Rehab Act and the ADA are the same.  *See* 29 U.S.C § 794(d); *Carroll v. England*, 321 F. Supp. 2d 58, 69 n.7 (D.D.C. 2004).  Thus, cases interpreting either are applicable in determining liability.  *Bell v. Gonzales*, No. 03-163, 2005 WL 691865, at *5 n.9 (D.D.C. Mar. 25, 2005).

A.  Employer's Knowledge of Disability

Ms. Bramwell has not shown that the FAA knew of her disability before December 5, 2000.  To be entitled to accommodation under the Rehab Act, an employee must show that her employer knew of her disability and refused a reasonable accommodation.  An employer is not required to provide an accommodation prior to receiving medical documentation that substantiates the employee's need for accommodation.  *Flemmings*, 198 F.3d at 861; *accord Heasley v. D.C. Gen. Hosp.*, 180 F. Supp. 2d 158, 167 (D.D.C. 2002) (to be protected by the ADA, disability must be shown at the time the plaintiff requested and was refused reasonable accommodation).

Ms. Bramwell argues that the Court should impute to the FAA constructive knowledge of Ms. Bramwell's need for an accommodation because the worker's compensation office knew of her disability.  Ms. Bramwell cites no authority for this proposition, and the Court rejects it.  Her medical records from a worker's compensation claim in Ohio could not be released to her supervisors in D.C. without her express authorization, which she never volunteered.  She also argues that her supervisors must have known about her disability.  However, she points to no evidence showing such knowledge.

Prior to receiving the letter dated December 5, 2000, from Dr. Glasser, the FAA had no reason to know that Ms. Bramwell was disabled.  She never told Mr. Davis or Mr. Metts that she was disabled, Defs.' Ex. 21, Pl.'s Admissions #3-4, and she never gave Mr. Davis or Mr. Metts a copy of Dr. Stratton's 1999 letter recommending that she work six-hour days.  Bramwell Dep. at 97.  She never signed a general release regarding the medical records associated with her disability, and she never authorized the FAA to share her medical records or documents that she submitted in support of her workman's compensation claim with her first or second line supervisors.  *Id.*; Pl.'s

Admissions #1-2.  While Mr. Davis was aware that Ms. Bramwell was struggling with emotional issues, he did not perceive her condition as a disability.  Pl.'s App. at 29, Davis Decl.

The FAA did not receive medical documentation of Ms. Bramwell's disability until Mr. Metts received the letter from Dr. Glasser dated December 5, 2000.  The FAA was not required to accommodate Ms. Bramwell's disability prior to receiving medical documentation that substantiated her need for such accommodation. *Flemmings*, 198 F.3d at 861; *Heasley*, 180 F. Supp. 2d at 167.

Even if the FAA were aware of Ms. Bramwell's disability before December 5, 2000, her claim under the Rehab Act would fail because the FAA in fact provided the accommodation she requested.  When Ms. Bramwell started her work at headquarters, she indicated that she "needed flexibility in her schedule" and needed to work shortened hours.  Pl.'s App. at 29, Davis Decl.  Mr. Davis allowed Ms. Bramwell to take part or whole days off as needed.  Defs.' Ex. 6, Davis Decl.; Bramwell Dep. at 40-41.  She was on a "maxi flex" or "variable"schedule during her entire tenure at headquarters, as reflected in her time records.  Pl.'s App., Time Records at 13-24.

After December 5, 2000, when Mr. Metts had received medical documentation of Ms. Bramwell's disability, the FAA further accommodated Ms. Bramwell.  Mr. Metts granted Ms. Bramwell's request for advanced sick leave, Bramwell Dep. at 111, and designated her work hours as six-hour days.  Pl.'s App. at 24; Defs.' Ex. 7, Metts Decl. ¶ 7.  After she had exhausted her annual leave, sick leave, and advanced leave, the FAA put her on leave without pay status starting on February 25, 2001.  Defs.' Ex. 15, FAA Letter at 2.

B.  Qualified Individual

To make out a prima facie case under the Rehab Act, Ms. Bramwell must show that she is a "qualified" individual, that she could perform the essential functions of her job with or without an accommodation.  She has not provided such evidence.

Under the Rehab Act, a plaintiff must demonstrate that she is a "qualified individual," that is, an individual with a disability[6] who, with or without reasonable accommodation, can perform the essential functions[7] of the job.  *See* 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m); *Breen v. Dep't of Transp.*, 282 F.3d 839, 841 (D.C. Cir. 2002).  Reasonable accommodations may include job restructuring as well as part-time or modified work schedules.  *Breen*, 282 F.3d at 841; *Carr*, 23 F.3d at 529 (citing 29 C.F.R. § 1614.203(c)).  However, an individual who cannot perform the essential duties of her job, even with an accommodation, is not "qualified" under the statute.  *Chinchillo v. Powell*, 236 F. Supp. 2d 18, 24 (D.D.C. 2003).  Further, "[a]n essential function of any government job is an ability to appear for work . . . ." *Carr*, 23 F.3d at 530.  An employer is not required to provide an indefinite leave of absence.  *Hudson v. MCI Telecomm. Corp.*, 87 F.3d 1167, 1169 (10th Cir. 1996); *Tyndall v. Nat'l Educ. Ctrs.*, 31 F.3d 209, 213 (4th Cir. 1994); *Sampson v. Citibank, F.S.B.*, 53 F. Supp. 2d 13, 18 (D.D.C. 1999), *aff'd*, 221 F.3d 196 (D.C. Cir. 2000); *accord Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759-60 (5th Cir. 1996) (reasonable accommodation does not require that employer wait indefinitely for employee's medical condition to be corrected).

---

[6] The FAA also contends that Ms. Bramwell did not suffer from a "disability" because her major life functions were not impaired.  The Court presumes, without deciding, that Ms. Bramwell was "disabled" as defined in the Rehab Act.

[7] Essential job functions are the fundamental duties of the employment position. *Kalekiristos v. CTF Hotel Mgmt. Corp.*, 958 F. Supp. 641, 660 (D.D.C. 1997).  Courts defer to the employer's judgment as to what job functions are essential.  *Id*.

13

Ms. Bramwell asserts that she could have performed the essential functions of her job if she were allowed to work part-time.[8]  This claim is disingenuous, as the FAA permitted Ms. Bramwell to work part-time.  During her entire tenure at FAA headquarters, Ms. Bramwell was permitted to take part or whole days off as needed, Defs.' Ex. 6, Davis Decl.; Bramwell Dep. at 40-41.  Time records show that she was on a "maxi flex" or "variable" schedule.  Pl.'s App., Time Records at 13-24.  In every week of her time at headquarters, except the four weeks she attended the Airspace and Procedures training course in Oklahoma City, Ms. Bramwell took whole or part days off, taking sick leave, annual leave, and leave without pay.  *Id.*  Even though she in fact was working part-time, Ms. Bramwell ceased reporting for work at all after December 5, 2000.  She took an indefinite leave of absence, her doctors did not release her to return to work, and she did not return to work.  She also moved to Ohio, not a convenient commuting distance from Washington, D.C., got married, and purchased a house.  Bramwell Dep. at 6-7, 22.  Therefore, Ms. Bramwell was not a qualified individual, because she was not able to come to work.[9]

---

[8] In addition to alleging that the FAA should have accommodated her by providing six-hour work days, Ms. Bramwell testified in deposition that the FAA should have accommodated her by providing job training, job coaching, and "single tasked" or "structured" assignments. Bramwell Dep. at 81, 92, 115.  The FAA contended in its motion for summary judgment that it did provide job training, job coaching, and "single tasked" or "structured" assignments, and that in some instances it offered such services but Ms. Bramwell declined to accept them.  Ms. Bramwell did not address this issue in her response to the motion for summary judgment.  "It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."  *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) (citing *FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997)).  Thus, the Court treats this issue as conceded.

[9] Further, Ms. Bramwell and her psychiatrist did not believe she was able to perform the essential functions of her job.  Dr. Glasser stated that she "is not a candidate to return to a GS14 position with the FAA."  Defs.' Ex. 14, Glasser Report at 2.  Ms. Bramwell testified at her deposition that "I don't even have the tools to do the job that's assigned," Bramwell Dep. at 132,

The FAA put Ms. Bramwell on leave without pay status for over a year, from February 25, 2001, until May 24, 2002, when she was terminated.  The FAA was not required to provide a leave of absence forever.  *Hudson*, 87 F.3d at 1169; *Tyndall*, 31 F.3d at 213; *Rogers*, 87 F.3d at 759-60.  Because Ms. Bramwell was not a "qualified" individual under the Rehab Act, the FAA's motion for summary judgment will be granted, and the complaint will be dismissed.

## IV. CONCLUSION

The Court will grant the FAA's motion for summary judgment and will dismiss this case.  A memorializing order accompanies this Memorandum Opinion.

Date: May 24, 2006                                          _____/s/_____
                                                                        ROSEMARY M. COLLYER
                                                                        United States District Judge

---

and "maybe a different job would be better for me." *Id*. at 142.